## Case No. 18,039.

### WOOSTER v. SIDENBERG et al.

[13 Blatchf. 88; 10 O. G. 244; 2 Ban. & A. 91.][1]

Circuit Court, S. D. New York. Aug. 3, 1875.

EXTENSION OF PATENT—RIGHTS OF LICENSEE.

W., during the first term of a patent for a folding guide for sewing machines, and while he was the sole owner of such patent, and was also interested in the sale of certain sewing machines, publicly authorized all purchasers of such sewing machines to use such folding guides without compensation. S. owned and used, during such first term, 125 of such sewing machines, and owned and was using, when such first term expired, 56 of such folding guides. The patent was extended. *Held*, that S. had a right to continue to use, during the extended term, such identical 56 folding guides.

[Cited in Black v. Hubbard, Case No. 1,460. American Tube Works v. Bridgewater Iron Co., 26 Fed. 336.]

In equity.

Frederic H. Betts and William D. Shipman, for plaintiff.

Solomon J. Gordon, for defendants.

SHIPMAN, District Judge. This is a bill in equity [by George H. Wooster] praying for an injunction and an account, and is founded upon letters patent for a folding guide for sewing machines. The patent was issued to Alexander Douglas, on October 5, 1858, and was extended for seven years from October 5, 1872. In August, 1863, said Douglas conveyed an undivided half part of said patent to Samuel S. Sherwood. Douglas and Sherwood conveyed the patent to Nathaniel Wheeler and William Whiley, partners by the name of Wheeler & Co., on May 5, 1864, and said Whiley conveyed his interest therein to said Wheeler on May 29, 1868. The assignments to Sherwood and to Wheeler & Co. were respectively for the unexpired portion of the original term of the patent. In September, 1872, Mr. Douglas, the patentee, assigned all his interest in the invention and letters patent to the complainant to

[1] [Reported by Hon Samuel Blatchford, Circuit Judge, reprinted in 5 Ban. & A. 56, and here republished by permission.]

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Hubert A. Banning, Esq., and Henry Arden, Esq., and here reprinted by permission.]

whom, as assignee, the patent was reissued on December 10, 1872.

The answer of the defendants admits the grant, extension and reissue of the patent, denies the novelty of the alleged invention, and further alleges, that, at the time the bill was filed, the defendants "had in use fifty binders, substantially such as are described in the reissue, and no more, all of which binders they had in lawful use at the expiration of the original term of said patent, which lawful use they acquired in three independent ways"— First, by a license, in 1863, from Douglas and Sherwood to Gustavus Sidenberg; second, by a free license from Nathaniel Wheeler to all users of Wheeler & Wilson sewing machines; third, by a dedication of the patent to the public, by Douglas, the patentee. Upon the trial, the validity of the patent was admitted, and the defendants solely relied upon the right which they had obtained by the two licenses, to continue the use of those binders which were in use at the expiration of the original term of the patent.

The defendants commenced business as manufacturers of ladies' linen collars and similar articles, about January 1, 1863. On October 5, 1863, Gustavus Sidenberg obtained a license from Douglas and Sherwood to use the folding guide for which Douglas had obtained a patent. By the provisions of this license, the licensee agreed to pay, in addition to his original payment of fifty dollars, the sum of five dollars for each guide which he should use, and, if he used, at any time, any guide without having first paid said five dollars, as an additional compensation for the right to use the same, the license should be null and void, and the licensee should also be deemed guilty of infringing said patent   Gustavus Sidenberg paid Douglas and Sherwood fifty-five dollars, on or about October 5, 1863. Nothing more was paid to them, or their assignees, by either of the defendants. On October 5, 1872, the defendants were using in their factory fifty-six Douglas guides, of which number forty-six had been made by William Priess, an employee of the Wheeler & Wilson Manufacturing Company, and ten had been made by William Brockmann, an employee of the defendants. The guides which Brockmann made were destroyed in a few days after the date of the reissue. Prior to 1864, Nathaniel Wheeler was president of the Wheeler & Wilson Manufacturing Company, a corporation for the manufacture of sewing machines, and, in May, 1864, the firm of Wheeler & Co., of which he was a member, became the owner of the Douglas patent. During his ownership of this patent, he authorized all persons who used the Wheeler & Wilson machine to use the Douglas guide, whenever they had occasion to do so, without compensation. The patent was apparently held by Wheeler & Co. for the benefit of the Wheeler & Wilson Company, and to promote its interests, and, with that object in view, Mr. Wheeler gave a parol and general authority to all users of the Wheeler & Wil-

son machines to procure, use and continue to use the Douglas attachment, if they chose so to do. The complainant urged, upon the trial, that this permission of Mr. Wheeler was limited to a permission to the owners of Wheeler & Wilson machines, to obtain, without royalty, the Douglas guide from some one of the employees of the company. It is true, that, upon cross-examination, in reply to the following question, "You say, in your direct examination, that you authorized those using the Wheeler & Wilson machine to use said patent, whenever they had occasion to do so, without compensation. Can you name any person to whom you gave such permission? If so, name all you can remember,"—Mr. Wheeler said, "I gave permission to the employees of our company to make the binders, on their own account, for such customers using our machines as might require them. I cannot call to mind the names of any such customers at this time." I do not understand from this portion of Mr. Wheeler's testimony, that he intended to say that he confined the use of the patent to those customers only who should procure the guides from the employees of the Wheeler & Wilson Company. He had previously said that all those who used the machines had authority to use the guides, and, upon being requested to give the names of all persons to whom he had given such permission, replied that he could not recall the names of the customers, but he did remember that he specifically permitted the employees of the company to make binders for all such customers as might require them. The witness did not intend to restrict the comprehensive character of the language which he had previously used. The defendants owned and were using in their business prior to October 5, 1872, about one hundred and twenty-five Wheeler & Wilson sewing machines.

The material question, which arises upon the foregoing facts, is, have the defendants a right, by virtue of the authority conferred by Mr. Wheeler, to continue the use of the guides which were in use at the expiration of the original term of the patent?

The license of Douglas and Sherwood affords the defendants no protection. By the terms of that license, they had a right to use only such guides as had been previously paid for, and, in respect to the use of all other guides, had declared themselves to be infringers. They had paid Douglas and Sherwood for one binder only, and were in the lawful use under those licensors, of no binder except the one for which they had paid. The right to use additional binders never existed. Steam Cutter Co. v. Sheldon [Case No. 13,331].

But, the right of the defendants which was obtained through Mr. Wheeler is of a different character. He had publicly authorized all purchasers of the sewing machines in the sale of which he was interested, to use these guides without compensation. The consideration which moved him to give this permission was one with which he was satisfied. Prior to the

date of the expiration of the original term, he would not have been allowed to prevent the defendants from the use of the binders which they had theretofore purchased. Probably all the guides which they then had in their possession were made after the assignment to Wheeler & Co., and, if a few were in existence prior to that date, the use of these few, which was originally unlawful, had become lawful by the license of Mr. Wheeler, the assignee.

But, it is said, that, admitting that Mr. Wheeler could not have stopped the use of those fifty-six binders, it does not follow that the defendants have the right to their continuing use after the expiration of the original term of the patent, for the following reasons: The statute (section 4928, Rev. St. U. S.) provides, that "the benefit of the extension of a patent shall extend to the assignees and grantees of the right to use the thing patented, to the extent of their interest therein," and the right granted by Mr. Wheeler was a mere license, and neither an assignment nor a grant, within the meaning of this section, nor a sale of the binders, and a party seeking the protection of the act must be a purchaser of the patented article, or be protected by some agreement of sale which the owner of the original patent had a right to make. who, in this case, had not a right to license the use of the binder during the extended term.

The supreme court had occasion, in Mitchell v. Hawley. [83 U. S.] 544, to consider this clause of the patent act, and to point out the "distinction between the grant of the right to make and vend the patented machine, and the grant of the right to use it." They say: "A patentee, when he has himself constructed a machine, and sold it, without any conditions, or authorized another to construct, sell, and deliver it, or to construct, and use, and operate it, without any conditions, and the consideration has been paid to him for the thing patented, the rule is well established, that the patentee must be understood to have parted, to that extent. with all his exclusive right; and that he ceases to have any interest whatever in the patented machine so sold and delivered, or authorized to be constructed and operated. Where such circumstances appear, the owner of the machine, whether he built it or purchased it, if he has also acquired the right to use and operate it during the lifetime of the patent, may continue to use it until it is worn out, in spite of any and every extension subsequently obtained by the patentee, or his assigns." Mr. Wheeler had authorized these defendants, being customers of the Wheeler & Wilson Company, to construct, and use, and operate. without any conditions, fifty-six binders. The consideration for this grant was paid to the owner of the patent by the purchase of Wheeler & Wilson sewing-machines. The defendants thus became owners of the guides which they used, and, by such ownership, and the right which they acquired from Mr Wheeler. they acquired the right to use and operate the machines until they were worn out. They were not simply licensees of the right to use a machine of which they were not the owners, but the machines had become their "private, individual property." "Complete title to the implement or machine purchased becomes vested in the vendee by the sale and purchase, but he acquires no portion of the franchise. as the machine, when it rightfully passes from the patentee to the purchaser, ceases to be within the limits of the monopoly." Mitchell v. Hawley. [83 U. S.] 548.

I perceive no substantial difference between the case of these defendants and the case of the complainant against Gilmour, which was an application for a temporary injunction against the use of certain Douglas guides, and was decided by Judge Blatchford, April 29, 1873. Gilmour, prior to the expiration of the original term, was in the use of four Douglas guides, upon as many Wheeler & Wilson sewing-machines. It is true, that Mr. Wheeler's affidavit in the Gilmour case contained a more detailed statement of the character and extent of the license, than was given in his deposition in the present case; but the facts which he stated are the same in each case. In the Gilmour affidavit he says: "I intended that all patrons of the Wheeler & Wilson Manufacturing Company should be at liberty to make and use Douglas binders whenever and wherever they wished, without charge or liability of any kind, to anybody. * * * All parties were told to make their own binders. I permitted the employees of the company, for the convenience of parties using Wheeler & Wilson machines, to make Douglas binders for them, and retain to themselves the prices paid. Full liberty and license was given all persons using Wheeler & Wilson machines, to use, in their business, without charge, all the Douglas binders they had in use when I became an owner in the Douglas patent before named, and to procure where they pleased, and continue to use, until worn out, all additional Douglas binders that their business required." Upon these facts, Judge Blatchford held, that, "within the principle laid down in Wyeth v. Stone [Case No. 18,107]. it is quite clear, that, as against Wheeler, who was the sole owner of the Douglas patent for more than four years before it expired, the defendant was in the lawful use, before and at the time the first term of the patent expired, of the four binders he was using when such first term expired. Wheeler could not have been heard to stop the defendant from the use of such four binders. The defendant was. within the meaning of the sixty-seventh section of the act of July 8, 1870 (16 Stat. 209), a grantee of the right to use such four binders, and, therefore, has a right to use, until they are worn out. the identical four binders which he was using when the first term of the patent expired. As to all other binders, the injunction is granted."

After the reissue. and before the filing of the bill. the defendants caused to be made, and used in their business, from fifteen to eighteen

"two-line" binders, which were supposed not to have been included in the reissue. Upon ascertaining that these binders were Douglas binders, the defendants caused them to be destroyed, in March or April, 1873. For the use of these binders the defendants are liable.

Let there be a decree, without costs, for an account of damages and profits for the use of these last named binders prior to their destruction, and an injunction against the use of binders described in the reissued patent, other than the identical forty-six binders which are now in lawful use.

[For other cases involving this patent, see note to Wooster v. Taylor, Case No. 18,040.]