## AMERICAN TUBE-WORKS *v.* BRIDGEWATER IRON Co. and others.[1]

*(Circuit Court, D. Massachusetts. February 3, 1886.)*

1. PATENTS FOR INVENTIONS—GUTHRIE PATENT, No. 125,044, OF MARCH 26, 1872.
   This patent was for an improvement on the patent to Freeborn Adams, for casting copper tubes, sued on in *Adams* v. *Bridgewater Iron Co., ante,* 324; and such improvement consisted in an upright mould in combination with a chamber or vessel into which the molten metal was poured, and arranged to be rotated. The first claim of the patent covering this combination *held* valid, and infringed by defendants in the use of a rotary chamber or basin in combination with a stationary mould.

2. SAME—IMPLIED LICENSE.
   The inventor and patentee having supervised and directed the building of a machine for the defendant company, and while in its employ, *held,* under such circumstances, the defendant company may be said to have a license to use that particular machine.

In Equity.

*Geo. L. Roberts* and *Geo. Wm. Estabrook,* for complainants.

*D. Hall Rice,* for defendants.

COLT, J. This action is brought for infringement of letters patent No. 125,044, issued to James F. Guthrie, March 26, 1872, and by him assigned to the plaintiffs, for improvement in casting copper tubes. The specification says:

[1] Reported by Charles C. Linthicum, Esq., of the Chicago bar.

"Heretofore, for casting copper tubes, etc., and under letters patent No. 24,915, issued to Freeborn Adams, a rotary mould has been employed. Practice, however, has shown that the use of a rotary mould did not produce uniform or perfect castings; that its length and weight, and its revolution at a very high speed, prevented that accuracy of rotation which is essential for a perfect introduction of the molten copper. The purpose of this invention is to obviate the disadvantages existing in the use of the letters patent aforesaid; or, in other words, of a rotary mould, while securing all the advantages which a rotary mould possesses over a stationary one as employed previous to and since said letters patent to Freeborn Adams. The invention consists of an upright mould in combination with a chamber or vessel, into which the molten metal is poured, that has one, two, or more tubes for distributing the molten metal within the mould, and is arranged to be rotated; its axis of revolution and the axis of the mould being in the same vertical line and plane. By this combination, a conveyance and introduction of the molten metal to the mould is secured, without injury or disturbance to the core of the mould or the mould itself, and with the utmost accuracy and most uniform and perfect results, as practice and use has demonstrated."

The claims of the patent are as follows:

"(1) A mould-case in combination with a revolving distributing chamber or hopper for conducting the molten metal to the mould, substantially as and for the purpose described. (2) The revolving distributing hopper for conducting the molten metal to the mould, when provided with two or more distributing tubes, substantially as described, for the purpose specified."

The defendants, as we have seen in the preceding case between the same parties, use a rotary chamber or basin, in combination with a stationary mould. The basin used by them since 1872 is substantially like the one described in the Guthrie patent in controversy, except in the use of two or more distributing tubes. As stated in the specification, Guthrie's purpose was to improve upon the Adams patent by the use of a rotary hopper or basin instead of rotating the mould. Both devices, however, secure the same method of distribution of the metal in the mould, which was the great merit of Adams' invention. We have already decided in the previous case that the defendants use substantially the method of Adams as to distribution, and it follows, therefore, that they use substantially the same method of distribution as Guthrie. We think it clear, from the conclusions reached in the other case, that the defendants infringe the first claim of the Guthrie patent, which is for a mould-case in combination with a revolving distributing chamber for conducting the molten metal to the mould. The prior patents referred to in this case, as in the other, do not anticipate the Guthrie device, for the same reasons that they did not anticipate the Adams process.

The second claim is not infringed, because the defendants do not use two or more distributing tubes. It appears that Guthrie was employed by the defendant company for some years previous to June 17, 1872; and that, during this time, a machine containing four rotary hoppers was built under his supervision and direction. Under such circumstances, the defendant company may be said to have a license to use that particular machine. *McClurg* v. *Kingsland*, 1 How. 202;

*Wooster* v. *Sidenberg*, 2 Ban. & A. 91; *Black* v. *Hubbard*, 3 Ban. & A. 39; *Bloomer* v. *Millinger*, 1 Wall. 340; *Magoun* v. *New England Glass Co.*, 3 Ban. & A. 114.

Decree for complainants.